AO 106 (Rev. 04/10) Application for a Search Warrant                                    AUTHORIZED AND APPROVED/DATE: ___EMJ 1/05/2024___

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH SNAPCHAT<br>ACCOUNT "ryan_121312" THAT IS STORED AT<br>PREMISES CONTROLLED BY SNAP, INC. | )<br>)<br>)<br>)<br>)<br>)    Case No. MJ-24-20-STE |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment "A," which is attached and incorporated by reference herein.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment "B," which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 2422(b) | Coercion and Enticement of a Minor |

The application is based on these facts:

See the attached Affidavit of Special Agent Shana Terry, FBI, which is incorporated by reference herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Shana Terry, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Jan 5, 2024**

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma

SHON T. ERWIN, U.S. MAGISTRATE JUDGE
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SNAPCHAT ACCOUNT "ryan_121312" THAT IS STORED AT PREMISES CONTROLLED BY SNAP, INC. | Case No. **MJ-24-** 20-STE |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Shana M. Terry, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this Affidavit in support of an application for a search warrant for information associated with the Snapchat account "ryan_121312" (hereinafter, the **"TARGET ACCOUNT"**) that is stored at a premises owned, maintained, controlled, or operated by Snap, Inc., an electronic communications service and/or remote computing service provider headquartered at 2772 Donald Douglas Loop North, Santa Monica, California 90405. The account to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Snap, Inc. to disclose to the government information (including the content of communications) in its possession, pertaining to the subscriber or customer associated with the **TARGET ACCOUNT**, as further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate the items described in Section II of Attachment B.

2.     I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been since February 2019. During that time, I have investigated violations of federal law,

to include federal violations concerning child pornography and the sexual exploitation of children. I have gained experience through training, classes, and work related to conducting these types of investigations. Further, as a federal law enforcement officer, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3.      I am familiar with the facts and circumstances of this investigation. The facts set forth in this Affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information, including information available on the Internet. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

4.      Based on my training, research, experience, and the facts as set forth in this affidavit, there is probable cause to believe the **TARGET ACCOUNT** contains evidence and/or contraband of violations of Title 18, United States Code, Section 2242(b).

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

6.      When the government obtains records pursuant to § 2703, or pursuant to a search warrant, the government is not required to notify the subscriber of the existence of the warrant.

2

18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(2), and (3). Additionally, the government may obtain an order precluding Snap, Inc. from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize the investigation. 18 U.S.C. § 2705(b).

## SNAPCHAT BACKGROUND

7.      Snapchat is a free mobile application made by Snap, Inc. and is available for download through the Apple App Store and Google Play Store. The Snapchat application is used to share information through photos, videos, and chat messages, as well as to enable voice and video calls.

8.      To use Snapchat, a user must download the mobile application to their mobile device and sign up by providing a name and date of birth. The user then selects a username and password. Snapchat then requires an e-mail address or phone number to create an account. A user can also create a display name.

9.      A Snapchat username is a unique identifier associated with a specific Snapchat account, and it can only be changed once a year. A display name is how a user appears on Snapchat and can be changed at any time.

10.     "Snaps" are photos or videos taken using the camera on an individual's mobile device through the Snapchat application, and they may be shared directly with the user's friends, in a Story (explained further below), or in a Chat.

11.     A "Snapstreak" means that a Snapchat user and a friend have Snapped each other within a 24-hour window for more than three consecutive days. To keep a Snapstreak going, both Snapchat users must send a Snap back and forth to each other within a 24-hour window.

3

12.     A Snapchat user can add Snaps to their "Story." A Story is a collection of Snaps displayed in chronological order. Users can manage their privacy settings so that their Story can be viewed by all users, their friends, or a custom audience. A user can also submit their Snaps to Snapchat's crowd-sourced service "Our Story," which enables their Snaps to be viewed by all users in Search and Snap Map.

13.     "Snap Map" allows a Snapchat user to see where their friends have been and what is going on around them. A user will not appear on Snap Map until they open it for the first time and choose to share their location. A user can update the people who have access to their location, to include going into "Ghost Mode" to hide their location from everyone. Snaps that have been submitted to Snap Map can show up on the Map. However, most of the Snaps on the Map are selected through an automated process. Snap Map submissions may be stored indefinitely and may be visible on Snapchat for a long period of time.

14.     "Memories" is Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. Content saved in Memories is backed up by Snapchat and may remain in Memories until deleted by the user. Users may encrypt their content in Memories, in which case the content is not accessible to Snap, Inc. and cannot be decrypted by Snap, Inc.

15.     A user can type messages, send Snaps, audio notes, and video notes to friends within the Snapchat application using the "Chat" feature. Snapchat's servers are designed to automatically delete one-on-one chats once the recipient has opened the message and both the sender and recipient have left the chat screen, depending on the user's "Chat" settings.

4

16.     An "emoji" is a small digital image or icon used to express an idea or emotion. Snapchat automatically assigns "Friend Emojis" to a user's friends on Snapchat based on the way a user and their friends use Snapchat.

17.     A "bitmoji" is a small digital cartoon image that a Snapchat user can personalize to look like or represent themself. A Snapchat user can link a previously created bitmoji to their Snapchat account or create a new bitmoji through the Snapchat application. A Snapchat user's bitmoji accompanies their name in multiple facets of the application, including Chats and Snap Map.

18.     If a Snapchat user has device-level location services turned on and has opted into location services on the Snapchat application, Snap, Inc. will collect location data, which will vary depending on the purpose of the collection. Users have some control over the deletion of their location data in the application settings.

19.     Basic subscriber information is collected when a user creates a new Snapchat account, alters information at a later date, or otherwise interacts with the Snapchat application. The basic subscriber information entered by a user in creating an account is maintained as long as the user has not edited the information or removed the information from the account.

20.     In addition to the information provided by a user to register an account, Snap, Inc. may retain the account creation date and Internet Protocol ("IP") address. Snap, Inc. also stores the timestamp and IP address of an account user's logins and logouts.

21.     For each Snapchat user, Snap, Inc. collects and retains the content and other records described above.

22.     Snap, Inc. retains logs for the last 31 days of Snaps sent and received, for 24 hours of posted Stories, and for any unopened Chats or those saved by the sender or recipient.

5

The logs contain meta-data about the Snaps, Stories, and Chats, but not the content.  Snap, Inc. may be able to retrieve content of some Snaps.

23.    Videos and photos sent and received as Snaps are accessible to users for only a short period of time.  If a screenshot is taken of an image by the recipient, the sender is notified. Videos cannot be saved by the recipient.  Because of the common belief by Snapchat users that videos and photos cannot be retained by recipients, Snapchat is often used to facilitate and document criminal acts.

24.    As explained herein, information stored in connection with a Snapchat account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element, or, alternatively, to exclude the innocent from further suspicion.

25.    The stored communications and files connected to the **TARGET ACCOUNT** may provide direct evidence of the offenses under investigation.

26.    In addition, the user's account activity logs, stored electronic communications, and other data retained by Snap, Inc. can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, e-mail and chat logs, documents, and photos and videos (and the data associated with the foregoing, such as location, date, and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  This geographic and timeline information may tend to either inculpate or exculpate the

account owner by allowing investigators to understand the geographic and chronological context of Snapchat access, use, and events relating to the crimes under investigation.

27.     Account activity may also provide relevant insight into the account user's state of mind as it relates to the offense under investigation.  For example, information on the account may indicate the user's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

28.     Other information connected to the use of Snapchat may lead to the discovery of additional evidence and possible victims, as well as the identification of co-conspirators, witnesses, and instrumentalities of the crime under investigation.

29.     Therefore, Snap, Inc.'s servers are likely to contain the material described above, including stored electronic communications and information concerning subscribers and their use of Snapchat to facilitate and communicate about the crimes under investigation.

30.     The FBI has previously requested that Snap, Inc. preserve all records pertaining to the **TARGET ACCOUNT** but was unable to obtain confirmation from Snap, Inc. that the Preservation Request was in effect.

## **PROBABLE CAUSE**

31.     On October 25, 2023, R.W., a fourteen-year-old female, was forensically interviewed at the FBI's Lawton Resident Agency after being identified as a potential victim of sexual exploitation by an FBI subject living outside the United States.  During the interview, R.W. revealed that, in addition to the overseas subject, she had also been contacted by a Snapchat user approximately two years ago, utilizing the Snapchat account "k_anderson21278," with display name Katie Anderson ("Anderson").  R.W. provided information about her

interactions with Anderson during the forensic interview, but due to the poor audio quality of the recording, she provided clarifying information during a second forensic interview on November 21, 2023.

32.    R.W. was contacted by Anderson through Snapchat. Through their initial communications, she told Anderson she was twelve years old. Anderson told R.W. his name on Snapchat was fake but would not reveal his real name. Initially, the conversation between R.W. and Anderson was routine, but then Anderson began asking her to take nude photographs of herself and send them to him via Snapchat. Anderson then began pressuring R.W. to participate in explicit video calls with him via Snapchat. R.W. began crying during the interview when asked to describe the video calls with Anderson. R.W. estimated Anderson pressured her to participate in a video call with him approximately once a week over the time period of approximately one year. Every video call would last approximately ten to fifteen minutes and included Anderson making R.W. remove her clothes from the waist up, and on one occasion, he made her show her genitals as well and instructed her to touch herself. Sometimes, R.W. cried during the calls because she did not like doing them, and Anderson would tell her, "Don't cry" and acted like he cared.

33.    Anderson never showed his face on the video calls and refused to provide R.W. with any real information about himself. Anderson would say only that he lived in Oklahoma City, despite R.W.'s attempts to attain his address. R.W. believed Anderson lived with roommates because he sometimes ended calls with her by saying his roommates were home.

34.    R.W. recalled a time when she argued with Anderson because she did not want to do a video call with him. Anderson sent her a video he had recorded of her and threatened to come to her house and show it to her parents if she did not do a video call with him. The

recording showed a previous video call between R.W. and Anderson, which Anderson had recorded with a different phone. In the call, R.W. was nude above the waist.

35.    Out of fear, R.W. continued participating in video calls with Anderson. Any time she tried to refuse, Anderson would use the threat of showing the explicit video to her parents. On one occasion, Anderson even sent her a picture of himself driving and stated, "I'm coming."

36.    In the summer of 2023, Anderson wanted to meet R.W. in person and threatened to show her parents the video if she did not agree to it. Anderson told R.W. he wanted her to touch his penis with her hands. R.W. did not want Anderson to pull into the driveway of her home, so she told him to park down the street in front of the community office building. In the back seat of Anderson's car, Anderson began touching R.W.'s chest and kissing her. He took off her shirt, pants, underwear, and bra. He touched her vagina with his hand and then penetrated her vagina with his penis. Anderson also forced R.W. to perform oral sex on him. R.W. cried as these things were happening, but she did not think Anderson noticed. R.W. recalled that Anderson used a condom when he had sex with her.

37.    R.W. and Anderson met in person again two or three weeks later. They met at the same location, and Anderson did the same things to her. Although this time, Anderson brought energy drinks with him and made R.W. drink them. R.W. recalled they said "Monster" on them, and they tasted "gross." Anderson said they would give her energy.

38.    On one occasion, R.W. was arguing with Anderson about having a video call, and Anderson stated, "I have other girls." R.W. did not know anything about the other girls Anderson referenced.

39.    R.W.'s parents provided the FBI consent to search R.W.'s phone, an iPhone 14. Contents of the iPhone 14 were extracted and made available for review via Cellebrite, a cell

phone extraction program widely used by law enforcement to extract and organize the contents of seized cell phones. The phone extraction listed two Apple IDs associated with the phone, one of which was the same as the e-mail address provided by the anonymous complainant described in paragraph 39, identifying R.W. as being the complainant.

40.    Although the iPhone 14 did not contain the contents of communications between R.W. and Anderson, it did acknowledge the existence of communication between them. The iPhone 14 documented a Chat between R.W.'s Snapchat account and Snapchat user "k_anderson21278," beginning on March 9, 2023 and ending on September 25, 2023. In addition, Katie Anderson is listed in the Contacts of the iPhone 14. InteractionC recorded 969 incoming interactions from the contact.[1]

41.    A screenshot was located on the iPhone 14 depicting the Snapchat Chat page. The screenshot is pictured on the following page:

_____

[1] According to the glossary on Cellebrite's website, www.cellebrite.com, InteractionC is a database, common to Apple devices, that tracks interactions such as text messages of the user, with recent contacts.



42.    Snapchat user Katie Anderson is listed on the Chat page, with a smiling face emoji pinned to the bitmoji, which, according to Snapchat's support page, help.snapchat.com, indicates the user is one of your "Best Friends." Snapchat uses an algorithm to determine a user's "Best Friends," which takes into consideration the number of Snaps sent to each other, whether there is a "Snapstreak" going, as well as other factors. When a user is one of your "Best Friends," it indicates you send a lot of Snaps to the user, but they are not your "#1 Best Friend."

43.    According to Snapchat's support page, the empty blue arrow pictured next to Anderson's bitmoji indicates Anderson opened a Chat.

44.     On October 26, 2023, an Administrative Subpoena was served to Snap, Inc. requesting subscriber information for Snapchat user "k_anderson21278" for the time period of October 1, 2022 to October 26, 2023.   Returned records revealed that the account for "k_anderson21278" was created on December 21, 2021 and was last active on October 26, 2023. The IP address used to create Snapchat account "k_anderson21278" on December 21, 2021 was 70.174.239.59.

45.     On November 8, 2023, a federal Search and Seizure Warrant was served to Snap Inc. for information related to Snapchat account "k_anderson21278."  A review of the provided records showed there were no saved communications between Anderson's account and R.W.'s account.  However, numerous Chat messages were provided between Anderson's account and an account later identified as belonging to a different individual, K.M.  The messages involve similarly sexual conversations and span the short time period between December 8, 2022 and December 14, 2022.  In the messages, Anderson asks K.M to show him her "ass" and "titties." When K.M. says she is not in a private location, Anderson asks if she has any saved photographs of her or her friends.  From context, it appears that some of the messages are sent during the course of video calls between Anderson and K.M.  Anderson instructs K.M. what he wants to see her do during the calls, such as "Lemme see the ass," and "Move back babe, Can't see the full tits."  Anderson also attempts to get K.M. to meet him in person to have sex.  However, there is nothing in the chat to suggest they did meet in person.

46.     An Administrative Subpoena was served to Snap Inc. for subscriber information associated with K.M.'s Snapchat account.  Snap Inc. provided the requested records, and shortly thereafter, provided additional information to FBI Liaisons at the National Center for Missing and Exploited Children ("NCMEC") regarding media files which were saved, and/or shared,

12

and/or uploaded from K.M.'s account and contained "Lascivious Exhibition of a Pubescent Minor." Information provided by both sources, as well as a review of other social media accounts, identified K.M. as being a 14-year-old girl at the time of her known communication with "k_anderson21278."

47.    Multiple media files were also provided by Snap Inc. pursuant to the Search Warrant. This is where the **TARGET ACCOUNT** first appeared. Upon a review of the media files, it became clear revealed that twelve media files were transferred between Anderson's account and the **TARGET ACCOUNT** on December 12, 2022 and December 13, 2022. Eleven of those files are photographs taken of a mobile phone screen showing the breasts of a female wearing a bra. The female's face is not shown. The remaining media file is a photograph showing a male holding his erect penis in his hand. The male's face is not shown.

48.    An Administrative Subpoena was served to Snap Inc. for subscriber information associated with the **TARGET ACCOUNT** for the time period of December 12, 2022 and December 13, 2022. Returned records revealed that the **TARGET ACCOUNT** was created on June 23, 2022, using the same IP address used to create account "k_anderson21278."

49.    Shortly after receiving subscriber information related to the **TARGET ACCOUNT**, Snap Inc. provided additional information to FBI Liaisons at NCMEC regarding media files which were saved, and/or shared, and/or uploaded to the account and contained child sexual abuse material. On the dates of November 4, 2023 and November 11, 2023, the **TARGET ACCOUNT** saved, and/or shared, and/or uploaded seven media files fitting the characterization of a "Sex Act" involving a "Pubescent Minor," and 22 media files fitting the characterization of "Lascivious Exhibition of a Pubescent Minor."

50.    The media files consisted of 25 images and five videos.  All media files appeared to be photographs or videos of a mobile phone communicating within the Snapchat application. Most images and videos depict a female rubbing and manipulating her bare breast with her hand. The female's face is not shown.

51.    The media files associated with the **TARGET ACCOUNT** included an image depicting a Snapchat profile with username "theylovemar3" (henceforth "M.R."). Many of the other media files appear to be related to this user profile. Several of the videos show the user of the **TARGET ACCOUNT** using a finger to click in and out of videos from M.R. sent via Chat. Below is a screenshot of a chat from one of those videos:



52.    Based on R.W.'s statements, the media files provided by Snap Inc., and the IP address data, I believe it is probable that the same individual utilizes Snapchat accounts "k_anderson21278" and "ryan_121312" (again, the latter of which is the **TARGET ACCOUNT**) in a criminal scheme to blackmail minor females.  Based on the evidence obtained thus far, it appears the user utilizes one Snapchat account to communicate with the minor females while recording their communications with a secondary device.  Potentially, the second Snapchat account is utilized to transfer the explicit recordings to the first account, where they are available to be used to threaten the females into their sexual participation with the user.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

53.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Snap, Inc.  Because the warrant will be served on Snap, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

54.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Snap, Inc. to disclose to the government digital copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

55.    In conducting this review, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime under investigation, including but not limited

15

to, undertaking a cursory inspection of all information within the account described in Attachment A. This method is analogous to cursorily inspecting all the files in an office filing cabinet to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with Snapchat Chats, including pictures and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account, as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but do not contain any searched keywords.

## AUTHORIZATION REQUEST

56.     I understand that no warrant shall issue, but upon probable cause and particularly describing the place to be searched and the things to be seized. Based on the information above, I submit that there is probable cause to believe there is evidence of violations of Title 18, United States Code, Section 2422(b) associated with the Snapchat account described in Attachment A. Specifically, there is probable cause to believe there are statements made to the user of the **TARGET ACCOUNT** and pictures and/or videos sent to or from the **TARGET ACCOUNT** that corroborate R.W.'s account of abuse and that may identify additional victims. A timeframe between December 21, 2021 to December 31, 2023 will further my investigation into the victimization of not only the known victims, but also of potential additional victims.

16

57.     I request to be allowed to share this Affidavit and the information obtained from this search (to include copies of digital media) with any government agency, to include state, local, and tribal agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

Shana M. Terry
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on January ____5____, 2024.

SHON T. ERWIN
United States Magistrate Judge
Western District of Oklahoma

17

## **ATTACHMENT A**

### **Property to be Searched**

This warrant applies to information associated with the Snapchat account "ryan_121312," which is stored at the premises owned, maintained, controlled, and/or operated by Snap, Inc., a company headquartered in Santa Monica, California.

## ATTACHMENT B

### Particular Things to be Seized

I.    **Information to be disclosed by Snap, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap, Inc., regardless of whether such information is located within or outside the United States, and including any messages, records, files, logs, photographs, videos, or other information that has been deleted but is still available to Snap, Inc., or has been confirmed preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snap, Inc. is required to disclose the following information to the government for the account listed in Attachment A for the time frame between **December 21, 2021 and December 31, 2023**.

A.  All stored communications and other files in Snap, Inc.'s possession (including account access information, event histories including dates and times, connection dates, times, and locations, connection IP information, message content, graphics files, video files, attachments, etc., further detailed below), whether physical, stored on electronic media, or temporarily extant on any computer or server, reflecting communications to or from the Snapchat account identified in Attachment A;

B.  All subscriber information, including Snapchat username, vanity names, e-mail addresses, phone numbers, full name, physical address, and other personal identifiers;

C.  All information pertaining to the creation of the account, including date and time of creation, IP address used to create the account, and all subscriber information provided at the time the account was created;

D.  Timestamp and IP address of all account logins and logouts;

19

E.  Logs of all messages and all files that have been created and Snaps sent or accessed via the Snapchat account identified in Attachment A, or that are controlled by user accounts associated with the Snapchat account;

F.  The account name, display name, identifiers, and all available subscriber information for any other Snapchat account(s) associated with the Snapchat account listed in Attachment A;

G.  All content, records, connection logs, and other information relating to communications sent from or received by the Snapchat account identified in Attachment A from December 1, 2022 to December 31, 2023, including but not limited to:

1.  Transmitter/Sender identifiers (i.e., addresses and/or IP address);

2.  Connection date and time;

3.  Method of Connection (telnet, ftp, http);

4.  Data transfer volume;

5.  Username associated with the connection, and other connection information, including the IP address of the source of the connection;

6.  All GPS location data and geographical data stored in relation to the account, including, but not limited to, location data derived from Snaps, Snap Map, Memories, Stories, logins, logouts, access records, and data pulled from the user's device.

7.  Account subscriber identification records;

8.  Other user accounts associated with, referenced in, or accessed by the Snapchat account identified in Attachment A;

20

9. Address books, contact lists, and "my friends";

10. Records of files or system attributes accessed, modified, or added by the user;

11. All records and other evidence relating to the subscriber(s), customer(s), account holder(s), or other entity(ies) associated with the Snapchat account identified in Attachment A, including, without limitation, subscriber names, user names, screen names or other identifiers, addresses, residential addresses, business addresses, and other contact information, telephone numbers or other subscriber number or identifier number, billing records, all information regarding the length of service and the types of services the subscriber or customer utilized, and any other identifying information, whether such records or other evidence are in electronic or other form. Such records and other evidence include, without limitation, correspondence and other records of contact by any person or entity about the above-referenced account, the content associated with or relating to postings, communications, and any other activities to or through the Snapchat account listed in Attachment A, whether such records or other evidence are in electronic or other form;

12. All records pertaining to communications between Snap, Inc. and the user(s) of the Snapchat account identified in Attachment A regarding the user or the user's Snapchat account, including contacts with support services and records of actions taken;

13. The content of all messages and Snaps sent, received, saved, stored, or otherwise preserved.

Snap, Inc. is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence, instrumentalities, and/or contraband of violations of Title 18, United States Code, Section 2422(b) involving the user of Snapchat account ryan_121312 and including, for the account listed in Attachment A, information pertaining to the following matters:

a.  Communication between the Snapchat account identified in Attachment A and R.W.;

b.  Communications between the Snapchat account identified in Attachment A and others from December 21, 2021 to December 31, 2023.

c.  Evidence indicating the times, geographic locations, and electronic devices from which the Snapchat account listed in Attachment A was accessed and used, to determine the chronological and geographical context of the Snapchat account access, use, and events relating to the crimes under investigation and to the Snapchat account user;

d.  Evidence indicating the Snapchat account user's state of mind as it relates to the crimes under investigation;

e.  The identity of the person(s) who created or used the Snapchat account identified in Attachment A, including records that help reveal the whereabouts of such person(s);

As used above, the terms "documents," and "communications," refers to all content regardless of whether it is in the form of pictures, videos, audio records, text communications, or other medium, and whether in draft or complete form, and whether sent or received.

As used above, the terms "records" and "information" include all forms of data stored by Snap, Inc., including IP addresses, toll records, and account identifying information.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, instrumentalities, and/or contraband described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.